UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JEFFREY A. MABERRY, ) <br> ) <br> Plaintiff(s), ) <br> ) <br> vs. ) <br> ) <br> STATE FARM MUTUAL AUTOMOBILE ) <br> INSURANCE COMPANY, ) <br> ) <br> Defendant(s). ) | Case No. 4:09CV580 JCH |

# MEMORANDUM AND ORDER

This matter is before the Court on Defendant State Farm Mutual Automobile Insurance Company's ("State Farm") Motion for Summary Judgment, filed January 15, 2010. (Doc. No. 20). The matter is fully briefed and ready for disposition.

## BACKGROUND

The procedural history of this matter is as follows: State Farm issued three policies of automobile liability insurance to Plaintiff Jeffrey A. Maberry ("Maberry"), as follows: Policy number 82 4162-F04-25B, issued on a 2000 Chevrolet C3500 pickup; Policy number 89 3180-E04-25B, issued on a 1972 Jeep CJ5 sportwagon; and Policy number 82 4163-F04-25C, issued on a 2002 Chevrolet Trailblazer sportwagon. (Defendant State Farm Mutual Automobile Insurance Company's Statement of Uncontroverted [Facts] in Support of its Motion for Summary Judgment ("State Farm's Facts"), ¶¶ 2, 3). On or about June 1, 2008, Maberry was operating a johnboat in a downstream direction on the Big River in St. Francois County, Missouri. (Petition for Damages, Doc. No. 1-4 ("Complaint" or "Compl."), ¶ 6). According to Maberry, on that date his johnboat was caused violently to collide with a motor vehicle submerged in the river. (Id.). Maberry asserts he sustained serious and permanent bodily injuries as a result of the collision. (Id., ¶ 7).

On or about March 23, 2009, Maberry filed a Petition for Damages in Missouri State court, asking State Farm to provide coverage for his damages under the uninsured motorist, medical payments, and lost earnings provisions of the policies. State Farm removed the action to this Court on April 15, 2009, on the basis of diversity of citizenship. (Doc. No. 1). As stated above, State Farm brought the instant Motion for Summary Judgment on January 15, 2010, asserting there exist no genuine issues of material fact and it is entitled to judgment as a matter of law. (Doc. No. 20). Specifically, State Farm maintains the uncontroverted facts demonstrate that any alleged injury Maberry suffered was the result of his collision with a collection of abandoned car parts, and such a collection does not constitute a "motor vehicle" within the plain meaning of the policies at issue. (Id., ¶¶ 4, 5).

The liability policies at issue state in pertinent part as follows:

**SECTION II--MEDICAL PAYMENTS--COVERAGE C**

**MEDICAL EXPENSES**

Persons for Whom Medical Expenses Are Payable

[State Farm] will pay medical expenses for ***bodily injury*** sustained by:

1. a. the first ***person*** named in the declarations;
   b. his or her ***spouse***; and
   c. their ***relatives***.

   These ***persons*** have to sustain the ***bodily injury***:
   a. while they operate or ***occupy*** a vehicle covered under the liability section; or
   b. through being struck as a ***pedestrian*** by a motor vehicle or trailer.

   A ***pedestrian*** means a ***person*** not an occupant of a motor vehicle or trailer.

**SECTION III--UNINSURED MOTOR VEHICLE--COVERAGE U**

[State Farm] will pay damages for ***bodily injury*** an ***insured*** is legally entitled to collect from the owner or driver of an ***uninsured motor vehicle***. The ***bodily injury***

must be sustained by an *insured* and caused by accident arising out of the operation, maintenance or use of an *uninsured motor vehicle*.

*Uninsured Motor Vehicle*--means:

1. a land motor vehicle, the ownership, maintenance or use of which is:

   a. not insured or bonded for bodily injury liability at the time of the accident; or....

2. a "phantom vehicle"--which is a land motor vehicle whose owner or driver remains unknown and causes *bodily injury* to the *insured*.

### SECTION V--LOSS OF EARNINGS--COVERAGE Z

[State Farm] will pay the *insured* 85% of his or her loss of *weekly earnings*. The loss has to be due to continuous *total disability* that is:

1. the direct result of *bodily injury* caused by accident,

2. while *occupying* or through being struck by a land motor vehicle or trailer.

(State Farm Policy 82-4162-F04-25B, State Farm's Exh. B, at Policy Form 9825.6, PP. 10, 12, 20; State Farm Policy 89-3180-E04-25B, State Farm's Exh. C, at Policy Form 9825.6, PP. 10, 12, 20; State Farm Policy 82-4163-F04-25C, State Farm's Exh. D, at Policy Form 9825.6, PP. 10, 12, 20). Nowhere in the policies is the term "motor vehicle" defined.

### SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of his pleading. Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. Id. at 255. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Id. at 249.

## DISCUSSION

The interpretation of an insurance policy is governed by state law. American Family Mut. Ins. Co. v. Co Fat Le, 439 F.3d 436, 439 (8th Cir. 2006). "Under Missouri law, the insured has the burden of proving coverage, and the insurer has the burden of proving that an insurance policy exclusion applies." Id. (citation omitted). The words of a policy are given their ordinary meaning[1], unless it is obvious that a technical meaning was intended, and ambiguous language is construed against the insurer. Gateway Hotel Holdings, Inc. v. Lexington Ins. Co., 275 S.W.3d 268, 275 (Mo. App. 2008). "An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the words used in the contract." Peters v. Employers Mut. Cas. Co., 853 S.W.2d 300, 302 (Mo. 1993)

---

[1] "'The plain or ordinary meaning is the meaning that the average layperson would understand.'" Cairo Marine Services, Inc. v. Homeland Ins. Co. of New York, 2010 WL 618509 at *5 (E.D. Mo. Feb. 18, 2010), quoting Shahan v. Shahan, 988 S.W.2d 529, 535 (Mo. 1999).

(citation omitted). However, "[m]ere disagreement by the parties regarding a contract term's interpretation does not render the term ambiguous." Lindsay v. Safeco Inc. Co. of America, 447 F.3d 615, 617 (8th Cir. 2006) (citation omitted). The insurance contract is to be examined as a whole to determine whether ambiguities exist in the language of the policy. Gateway Hotel Holdings, 275 S.W.3d at 275 (citation omitted).

In its Motion for Summary Judgment, State Farm contends there exists no coverage for Maberry's claims, because the collection of abandoned car parts with which Maberry collided did not constitute a "motor vehicle" within the plain meaning of the policies at issue. Upon consideration of the terms of the policies at issue, together with the record before it, the Court agrees. The three provisions pursuant to which Maberry makes claims all condition State Farm's liability upon Maberry proving that he was injured as a result of an accident involving a "motor vehicle." (See State Farm's Exhs. B, C, D, PP. 10, 12, 20). As noted above, the policies do not define "motor vehicle," and so the Court must apply the plain and ordinary meaning of the term. Under Missouri law, "[t]he dictionary is a good source for finding the plain and ordinary meaning of contract language." Ferguson v. Gateway Ins. Co., 151 S.W.3d 911, 913 (Mo. App. 2004), citing Shahan, 988 S.W.2d at 535.

> A motor vehicle is "an automotive vehicle not operated on rails; esp[ecially] one with rubber tires for use on highways." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 1476 (1993). "Automotive" means something that "contain[s] within itself the means of propulsion: self-propelling." Id. at 148.

Id. The collection of car parts, submerged as it was beneath between six inches and two feet of water, clearly was not capable of self-propulsion. (See State Farm's Facts, ¶ 24).

Furthermore, even assuming the objects with which Maberry collided were at one time an intact motor vehicle, Missouri courts have adopted the rule that, "a vehicle can reach such a condition of disrepair that it can no longer be considered a motor vehicle for insurance policy purposes."

McKee v. American Family Mut. Ins. Co., 932 S.W.2d 801, 803 (Mo. App. 1996) (citations omitted).

The following principles apply:

> In those cases where the circumstances--be they the combination of the degree of disrepair of the car, the intent of the owner, or otherwise--suggest that the nonoperating condition is a mere temporary one, the courts have been inclined to find that the vehicle was an "automobile" within the terms of the policy. In those cases where such circumstances suggest either that the inoperable condition is probably permanent, or apt to be of long duration with little reasonable possibility of restoring the car to a condition where it can be driven on the roads, the courts have then tended to find that the vehicle is not an "automobile" within the terms of the policy.

Id., quoting Quick v. Michigan Millers Mut. Ins. Co., 250 N.E.2d 819, 821 (Ill. App. 1969).

This Court recognizes that whether the objects with which Maberry collided constituted a "motor vehicle" within the meaning of the automobile liability insurance policies normally would be a question of fact. McKee, 932 S.W.2d at 803. In this case summary judgment is appropriate, however, because the undisputed testimony demonstrates as a matter of law that the submerged objects were not a "motor vehicle" within the terms of the policies. Id. For example, both Sergeant Brian Parrott, the officer with the Missouri State Water Patrol who investigated the accident, and James Kimes, Sr., a witness, testified that although there was an engine block partly to mostly submerged at the accident site, it was not connected to any other parts.[2] (Parrott Dep., State Farm's Exh. F, PP. 25-29; Kimes, Sr. Dep., State Farm's Exh. H, P. 26). Furthermore, while they both testified as to the presence of a larger part, most likely a car frame, located approximately 15-20 feet from the engine block, they agreed the frame was incomplete, as it lacked body parts including doors, windows, a roof, a radiator, a steering wheel, etc.[3] (Parrott Dep., PP. 27, 32; Kimes, Sr. Dep., PP. 32,

---

[2] None of the other three individuals present at the time of the accident, Maberry, his son Josh Maberry, or James Kimes, Jr., had personal knowledge of the objects with which Maberry's boat collided.

[3] Kimes, Sr. testified that the frame assembly was actually lying upside-down in the water. (Kimes, Sr. Dep., PP. 28, 37-38).

41, 29 ("It looked to me like it was only part of a car frame."). Under these circumstances, the degree of disrepair of the alleged automobile was so great there existed no reasonable possibility of restoring the car to an operable condition.[4] The collection of objects with which Maberry collided thus did not constitute a "motor vehicle" within the meaning of the policies, and so State Farm's Motion for Summary Judgment must be granted. See McKee, 932 S.W.2d at 803-804 (contrasting plaintiff's van, a "motor vehicle" because it required only minor repairs at the time of the accident, and plaintiff admitted his intention to return it to operational condition, with, "a situation where plaintiff permanently junked or abandoned the van or retired it from use as a vehicle.").[5]

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant State Farm Mutual Automobile Insurance Company's Motion for Summary Judgment (Doc. No. 20) is **GRANTED**, and Plaintiff's Complaint is **DISMISSED** with prejudice. A separate Judgment will accompany this Memorandum and Order.

Dated this 4th day of March, 2010.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE

---

[4] Maberry further cannot suggest the intent of the owner was to restore the car to an operable condition, as admittedly the abandoned parts had no identifiable owner or former owner. (State Farm's Facts, ¶ 25).

[5] The Court finds the case cited by Maberry in support of his position, State v. Ridinger, 266 S.W.2d 626 (Mo. 1954), distinguishable, as it involved the interpretation of a criminal tampering statute, not the coverage provisions of an automobile liability insurance policy.